**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
EL PASO DIVISON**

| | |
|---|---|
| **ADRIANA ALVAREZ,** | |
| *Plaintiff,* | |
| v. | Civil Action No.:　3:23-cv-00148 |
| **BROKERS LOGISTICS, LTD.** | |
| *Defendant.* | |

## COMPLAINT

Plaintiff Adriana Alvarez files this action for damages against Defendant Brokers Logistics, Ltd. for discriminating against her on the basis of religion in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e, *et seq.* ("Title VII") and the Texas Commission on Human Rights Act, Tex. Labor Code § 21.051 ("TCHRA"), and in further support thereof, alleges as follows:

## PRELIMINARY STATEMENT

"Violate your sincerely held religious beliefs or you lose your job." There is perhaps no greater textbook example of the conduct expressly prohibited by Title VII–but such is expressly the case here. At its core, this case seeks redress from Brokers Logistics, Ltd. ("Defendant" or "Brokers") unilateral decision to vest itself with unfettered authority to determine when—and when not—an American citizen may exercise her fundamental right to freely exercise her religion and be free from discrimination and retaliation on the basis of her religion in the workplace.

More specifically, Ms. Alvarez submitted a religious accommodation request as her sincerely held religious beliefs conflicted with Brokers' COVID-19 mitigation policy. After submitting her request, Brokers began questioning Ms. Alvarez about her beliefs, inquiring about

"where she went to church" and even going so far as to asking if she had a "spiritual leader" who would be "willing to provide more information" to Brokers. Notwithstanding the fact that the aforesaid inquires far exceed the EEOC guidelines instructing employers to "**ordinarily assume that an employee's request for religious accommodation is based on a sincerely held religious belief**", U.S. Equal Emp. Opportunity Comm'n, EEOC-CVG-2021-3, *Section 12: Religious Discrimination* (2021), Ms. Alvarez fully complied and engaged in the interactive process, submitting responses to Brokers' questions within one business day. But Brokers did not like her responses and as a result, Brokers refused to accommodate Ms. Alvarez and terminated her employment.

Ms. Alvarez fully exhausted her administrative remedies, however, all efforts to resolve the forthcoming violation of state and federal law were unsuccessful. As a result, Ms. Alvarez commenced this action.

## JURISDICTION AND VENUE

1.      This action arises under 42 U.S.C. § 2000e-2 and therefore, jurisdiction is proper pursuant to 28 U.S.C. §§ 1331 and 1343.

2.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in this District and Brokers maintains conducts substantial business in this district.

3.      This Court is authorized to grant Ms. Alvarez's prayer for relief regarding costs, including a reasonable attorney's fee, pursuant to 42 U.S.C. § 1988.

## PARTIES

4.      Plaintiff Adriana Alvarez ("Ms. Alvarez") is an adult resident of El Paso County, Texas and a former Brokers employee. At all times relevant, Ms. Alvarez was employed by

Brokers and served the defendant corporation as a Customer Service Representative until she was discriminated against on the basis of her religion and retaliated against, ultimately culminating in her termination on or about February 7, 2022.

5.     Defendant Brokers Logistics, Ltd. ("Brokers") is a Texas corporation headquartered in El Paso, Texas that specializes in international trade protocols, traditional logistical services including warehousing (public and contract), transportation, and cross dock and transloading services. At all times relevant, Brokers employed Plaintiff and is an "employer" within the meaning of 42 U.S.C. § 12111(5) as it employed more than fifteen (15) employees for each working day in each of 20 or more calendar weeks in each of the last five (5) years.[1] As an employer, Brokers is subject to Title VII, which requires employers (such as Brokers) to reasonably accommodate its employees' (such as Ms. Alvarez) sincerely held religious beliefs.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

6.     In February 2022 and well-within 180 days of her February 7, 2022 termination, Ms. Alvarez timely filed a Charge of Discrimination with the EEOC alleging discrimination on the basis of religion and retaliation.

7.     On or about, January 11, 2023, the EEOC issued Ms. Alvarez her Notice of Right to Sue Letter, which provided in pertinent part, that Ms. Alvarez had 90 days to commence a civil action in federal court. *See* Exhibit 1.

8.     Because Ms. Alvarez commenced this action asserting claims for religious discrimination and retaliation within 90 days of receiving her Notice of Right to Sue Letter regarding her timely filed Charge of Discrimination alleging religious discrimination and retaliation, all conditions precedent to maintaining this action have been satisfied.

---

[1] Brokers has been in business for approximately fifty-six (56) years; the substantial number of which—or all of which years—Brokers employed more fifteen or more persons.

## STATEMENT OF FACTS

9.      On or about January 3, 2022, Brokers Logistics notified employees that the stay blocking enforcement of the Occupational Health and Safety Administration's ("OSHA") Emergency Temporary Standard ("ETS") had been vacated by the Sixth Circuit and as a result, Brokers would begin adhering to the mandates of the ETS, which required companies employing 100 or more persons to mandate each employee become vaccinated against COVID-19 and report their vaccination status to their respective employers.

10.     Brokers advised that its employees had until January 10, 2022 to satisfy the above-mentioned two (2) ETS requirements.

11.     On or about January 5, 2022, Ms. Alvarez submitted to Brokers her request for a religious accommodation as the two demands under the ETS violated her sincerely held religious beliefs. In doing so, Ms. Alvarez did not include in her request all of her religious beliefs nor did she address each and every potential COVID-19 related policy or mitigation protocol, nor was she required to do so. Rather, Ms. Alvarez sought an accommodation only as broad in scope as to encompass the obligations imposed upon her by Brokers and pursuant to the newly revitalized ETS.

12.     That same day, on January 5, 2023, Brokers asked Ms. Alvarez to complete a "Request for Accommodation" form, which Ms. Alvarez completed and returned on January 7, 2022.

13.     On or about January 13, 2023, and while Brokers allegedly continued "reviewing Ms. Alvarez's request", the United States Supreme Court blocked the ETS from going into effect, thereby nullifying and vacating any legal obligation under which Brokers was compelled to

demand its employees to (1) become vaccinated against COVID-19; (2) report their vaccination statuses, or (3) otherwise engage in any legally-required behavior concerning COVID-19.

14.    As of January 13, 2022, Brokers had no legal obligation to impose any policies concerning the COVID-19 pandemic.

15.    Ms. Alvarez did not wear a facial covering at any time relevant to this action.

16.    On or about January 26, 2022, Laura Chavez, Brokers' Director of Human Resources, confronted Ms. Alvarez and asked why Ms. Alvarez was not wearing a facial covering. Ms. Alvarez responded and informed Ms. Chavez that wearing a facial covering absent any legal obligation to do so violated her sincerely held religious beliefs.

**II:  Ms. Alvarez's Sincerely Held Religious Beliefs**

17.    Ms. Alvarez is a Christian who, as part of her faith, consistently reviews literature concerning her faith. Among other things, Ms. Alvarez strives to further educate herself about the Word of God and grow in her faith as she applies Biblical prophecy to her own life to the best of her ability, and she does so in the manner she sincerely believes is identical to, or most closely represents, the desires and intent of the Lord.

18.    After the Supreme Court's decision on January 13, 2022, Ms. Alvarez prayed and further educated herself on the Bible to better understand how God intended for the Court's ruling to be applied in her life. In studying the Court's opinion and various verses throughout the Bible, Ms. Alvarez not only re-affirmed that the Lord prohibited her from receiving the COVID-19 vaccination as He explains through scripture. but also, the Lord forbid her from covering her face.

19.    Specifically, Ms. Alvarez believes that Jesus is the son of God (Luke 9:35) and God the Father sent His son, Jesus Christ to die for all sinners so that, if we believe, we would live eternally with him when he returns (John 3:16). Ms. Alvarez believes in the resurrection of Jesus

Christ and that on the third day, He rose just as He said He would. (Matthew 12:40, Luke 24:1-12).

20.      Ms. Alvarez sincerely beliefs that God is triune and exists as Father, Son and Holy Spirit and that the Holy Spirit is the Spirit of Truth and dwells with her as a believer and follower of Christ. (John 14:17). The Holy Spirit helps Ms. Alvarez and teaches her, (John 14:26, Luke 12:12), guides her personally, (John 16:13) and leads her as a child of God. (Romans 8:14). As a believer and follower of Christ, Ms. Alvarez sincerely believes that the Holy Spirit dwells in her and guides her.

21.      Following the Supreme Court ruling, the Holy Spirit did, in fact, guide Ms. Alvarez in prayer and study—leading Ms. Alvarez to discover, for the first time, 2 Corinthians 3:18, which reads:

> And we all, **with unveiled face**, beholding the glory of the Lord, are being transformed into the same image from one degree of glory to another.  For this comes from the Lord who is the Spirit. 2 Corinthians 3:18.

22.      After contemplation and prayer, Ms. Alvarez came to know and sincerely believe that the meaning of 2 Corinthians 3:18 compels of her to maintain an "unveiled face" in order to behold the glory of God. Ms. Alvarez sincerely believes that, to live to the contrary—that is, with a "veiled face" (i.e., facial covering)—is a sin as doing so runs afoul of the Lord's Word and otherwise impedes her ability to be transformed in the same image as the Lord, who is the Holy Spirit inside of her.

23.      As a child of God and through the reading of scripture, Ms. Alvarez has learned that one of the most important ways to recognize the Holy Spirit's guidance and direction is to know God's Word. She has learned that the closer she walks with God, the clearer she understands

Him. And this is supported in John 10:27, where the Lord says, "My sheep listen to my voice, I know them, and they follow me."

24.    In Christ, and as His child, Ms. Alvarez is instructed to obey him. Deuteronomy 11:26-28, Luke 11:28, James 1:22-25, 1 John 2:4-6. He has made it clear that what He desires is obedience and submission to Him. 1 Samuel 15:22-23.

25.    It is also clear to Ms. Alvarez that she must be discerning as she seeks to follow His direction and to know the will of God. 1 John 4:1, Hebrews 5:14, Philippians 1:9-10, Hebrews 4:12, Romans 12:2, 1 Corinthians 2:14. And it is this discernment, by and through prayer, that compelled Ms. Alvarez, as of January 13, 2022 onward, to refrain from wearing facial coverings as she sincerely believes that doing so dishonors God, conceals her identity, and assaults her body in which the Holy Spirit resides.

26.    Ms. Alvarez informed Brokers that wearing a facial covering violated her sincerely held religious beliefs and as early as January 26, 2022, Brokers, by and through its agent, Ms. Chavez, knew Ms. Alvarez's sincerely held religious beliefs prohibited her from complying with the company's mandatory facial covering policy.

**III:  Brokers' Refusal to Abide by Federal and State Law and Accommodate Ms. Alvarez**

27.    On or about January 28, 2022, Brokers asked Ms. Alvarez to initiate the interactive process with Ms. Chavez and Brokers' Vice President concerning her religious accommodation.

28.    Ms. Alvarez was fully willing to participate in the interactive process with Brokers, advised Brokers of her willingness to engage in the interactive process, and Ms. Alvarez did, in fact, willingly participate interactively with Brokers regarding her religious accommodation request.

29.     Specifically, on that same day, Brokers initiated the interactive process and provided Ms. Alvarez with a form to complete so Brokers could "better understand the basis of [Ms. Alvarez's] requested exemption."

30.     On or about February 3, 2022, Ms. Alvarez returned the completed form to Brokers, inclusive of responses to all questions asked. In doing so, Ms. Alvarez advised Brokers of the very nature of her sincerely held religious beliefs, stating, "Wearing a mask is an assault to the body and I will not dishonor God by obstructing and concealing my identity." This recitation of her sincerely held religious beliefs, while more concise than the fully explained belief as set forth above, is identical to her sincerely held religious beliefs as articulated herein.

31.     The form Brokers provided to Ms. Alvarez failed to provide sufficient space for Ms. Alvarez to fully explain her sincerely held religious beliefs; thus, the basis for her summarized response to the question asking her to state her sincerely held religious beliefs.

32.     The remaining questions on the form are wholly irrelevant, yet nevertheless, Ms. Alvarez endulged Brokers and volunteered the information despite having no legal obligation to do so.

33.     For example, Brokers asked Ms. Alvarez questions about what church she attends, who Brokers could contact to obtain additional information about Ms. Alvarez's religious beliefs, and even inquired as to the actions of church goers who are entirely irrelevant as to the salient inquiry concerning Ms. Alvarez's request for an accommodation during the hours she worked at Brokers. Despite this, Ms. Alvarez provided responses to questions she had no obligation to answer.

34.     By providing answers to questions to which she had no obligation to respond, Ms. Alvarez overwhelmingly demonstrated her willingness to participate in the interactive process, and

more importantly, Ms. Alvarez *did* participate in Brokers' interactive process concerning her request for an accommodation.

35.     Despite the fact that Ms. Alvarez (1) participated in the interactive process regarding her accommodation; (2) informed Brokers of her sincerely held religious beliefs; and (3) suggested multiple accommodations for her sincerely held religious beliefs that were reasonable and did not impose any undue hardship upon her employer, Brokers refused to adhere to well-established federal and state protections and refused to afford Ms. Alvarez the accommodation to her sincerely held religious beliefs she was lawfully entitled.

36.     On or about February 4, 2022, Brokers advised Ms. Alvarez that she would not be receiving an accommodation and she was required to report to work and upon arrival, she was required to violate her sincerely religious beliefs.

37.     Then, on or about February 7, 2022, Ms. Alvarez refused to violate her sincerely held religious beliefs in the scope of her employment and in accordance with Brokers' demand, and as a direct and proximate result, Brokers terminated her employment immediately.

## COUNT I
### RELIGIOUS DISCRIMINATION
### Violation of Title VII, 42 U.S.C. §§ 2000e, *et seq.*

38.     Ms. Alvarez re-alleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

39.     Ms. Alvarez sincerely holds religious beliefs and is a member of a protected class based on her religion.

40.     Brokers knew of Ms. Alvarez's sincerely held religious beliefs as evidenced by its engagement in the interactive process, and Brokers' February 4, 2023, decision denying Ms. Alvarez's request for a religious accommodation.

41.    Alternatively, to the extent Brokers contends it did not know of Ms. Alvarez's sincerely held religious beliefs, Brokers then concedes it denied her request for an accommodation without substantively engaging in an interactive process that sufficiently apprised Brokers of Ms. Alvarez's sincerely held religious beliefs and otherwise concedes that Brokers did not sufficiently or properly review Ms. Alvarez's accommodation request in a manner consistent with her right to an individualized and informed case-by-case review of her request.

42.    Alternatively, Brokers (1) knew of Ms. Alvarez's sincerely held religious beliefs, but did not subjectively believe her beliefs were religious, or (2) Brokers did believe her beliefs were religious, but did not believe that Ms. Alvarez did not sincerely hold the beliefs asserted, and as a result, Brokers denied her accommodation request.

43.    Brokers denied Ms. Alvarez's religious accommodation request because it did not believe her beliefs were religious in nature.

44.    Brokers denied Ms. Alvarez's religious accommodation request because it did not believe Ms. Alvarez sincerely held the religious beliefs she asserted.

45.    Brokers denied Ms. Alvarez's religious accommodation request because it did not believe the beliefs she asserted were religious, nor did Ms. Alvarez sincerely hold the beliefs she asserted.

46.    Ms. Alvarez' beliefs asserted in the February 3, 2023 are religious in nature, in that compliance with the beliefs asserted impacts her ability to ultimately go to Heaven and be in a place with the Lord. The beliefs asserted, are sincere and meaningful to Ms. Alvarez and the beliefs asserted occupy a place parallel to that filled by God.

47.    Ms. Alvarez need not assert a belief that is "central to a religion" in order to be entitled to a religious accommodation. Whether an asserted belief is or is not central to a religion

or whether an asserted belief is "a true religious tenet" are inquiries not open to question. *See* Civil Rights Act of 1964, § 703(a)(1), 42 U.S.C. § 2000e–2(a)(1).

48.     Ms. Alvarez is an employee within the meaning of Title VII.

49.     Brokers is an employer within the meaning of Title VII.

50.     Title VII forbids an employer from refusing to provide a reasonable accommodation to an employee in need of a religious accommodation, absent proof that granting the accommodation would impose upon the employer an undue hardship. 42 U.S.C. §§ 2000e(j), 2000e-2(a)(1); *E.E.O.C. v. Abercrombie & Fitch Stores, Inc.*, 575 U.S. 768, 774 (2015).

51.     This extension of actionable religious discrimination that includes an employer's failure or refusal to accommodate is derived from Title VII's definition of "religion" and includes "all aspects of religious observance and practice, as well as belief, unless an employer demonstrates that he is unable to reasonably accommodate to an employee's or prospective employee's religious observance or practice without undue hardship on the conduct of the employer's business." 42 U.S.C. § 2000e(j).

52.     A plaintiff can therefore make out a *prima facie* case under Title VII by showing (1) she sincerely held religious beliefs; (2) the practice of which conflicted with an employment duty; (2) the employer took adverse action, including suspension without pay and termination; (4) because of the plaintiff's inability to fulfill the job requirement; and (5) the plaintiff's religious practice was a motivating factor in the employer's decision. *See Abercrombie & Fitch*, 575 U.S. at 775.

53.     Here, Ms. Alvarez advised Brokers of her sincerely held religious beliefs that she could not comply with Brokers' mandatory facial covering policy as she sincerely believes that

wearing facial coverings dishonors God, conceals her identity, and assaults her body in which the Holy Spirit resides.

54.     To violate her aforesaid sincerely held religious belief would constitute a sin and impact Ms. Alvarez's ability from one day, going to Heaven and sharing that Place with God.

55.     Ms. Alvarez informed Brokers of the conflict between her sincerely held religious beliefs and Brokers' mandatory facial covering policy and expressly sought an accommodation.

56.     In response to Ms. Alvarez's request for an accommodation, Brokers took an adverse action against her by denying her an accommodation, placing her on unpaid leave, and terminating her employment. *See* 42 U.S.C. § 2000e-2(a)(1) (actionable adverse actions include "discharg[ing]," or otherwise discriminating with respect to the "terms" and "conditions" of employment).

57.     Denying Ms. Alvarez's accommodation request is an adverse employment action.

58.     Suspending Ms. Alvarez without pay is an adverse employment action.

59.     Terminating Ms. Alvarez is an adverse employment action.

60.     Brokers' adverse employment action of denying Ms. Alvarez's accommodation request is actionable as it violates Title VII.

61.     Brokers' adverse employment action of suspending Ms. Alvarez without pay Ms. is actionable as it violates Title VII.

62.     Brokers' adverse employment action of terminating Ms. Alvarez is actionable as it violates Title VII.

63.     Brokers was motivated by Ms. Alvarez's religion, practice of her religion, exercise of her sincerely held religious beliefs, or her refusal to violate her sincerely held religious beliefs,

and with such motivation, Brokers took one or more of the aforementioned adverse employment actions against Ms. Alvarez.

64.    Brokers made no effort to accommodate Ms. Alvarez's sincerely held religious objection to its mandatory facial covering policy and then terminated her employment because of the aforesaid conflict between Brokers policy and Ms. Alvarez's sincerely held religious beliefs.

65.    Brokers' failure to produce any alternative basis for why it could not accommodate Ms. Alvarez therefore requires Brokers to have accepted Ms. Alvarez's proposal absent undue hardship.

66.    To the extent Brokers alleges the basis for why it refused to accommodate Ms. Alvarez rests upon any assertion of Brokers' subjective beliefs concerning the sincerity of Ms. Alvarez's beliefs, Brokers failed to act as a reasonably prudent employer by deciding to deny her accommodation request based on information it unilaterally and subjectively deemed to be "vague" and "merely an excuse" instead of seeking further clarification on her beliefs or providing Ms. Alvarez more room to more thoroughly articulate her beliefs on the form Brokers demanded she submit her request.

67.    Brokers has not and cannot articulate the "undue hardship" it would have endured had Brokers accommodated Ms. Alvarez.

68.    Brokers has not and cannot articulate the basis upon which the interest effectuated by its mandatory facial covering policy is so compelling as to lawfully infringe upon Plaintiff's interest in exercising her constitutional and fundamental right to freely exercise her religion.

69.    Brokers has not and cannot articulate a basis as to why its mandatory masking policy is the least restrictive means necessary to effectuate a compelling interest that is so

compelling as to legally excuse Brokers from infringing upon Plaintiff's interest in exercising her constitutional and fundamental right to freely exercise her religion.

70.     Brokers mandatory masking policy does not effectuate a compelling interest.

71.     Brokers mandatory masking policy does not effectuate any interest.

72.     Brokers mandatory masking policy is unlawful, as applied.

73.     Brokers was not subjected to undue hardship at anytime, nor would Brokers have been subjected to undue hardship had it accommodated Ms. Alvarez as its mandatory masking policy did not achieve any interest, and absent achieving an interest, the policy is definitionally futile as those who are in compliance and those who are not, are nevertheless equally positioned.

74.     The reasonable accommodations Ms. Alvarez offered and suggested were sufficient and did not constitute undue hardships.

75.     The reasonable accommodations Ms. Alvarez offered and suggested did not detrimentally impact any interest Brokers purportedly effectuated by and through its mandatory masking policy.

76.     Other substantially similar or virtually identical national and international logistics companies that qualify as an "employer" under Title VII have not insisted on mandatory masking without allowing accommodations for religious objectors.

77.     As a direct and proximate result of the aforesaid complained of conduct in violation of Title VII, Ms. Alvarez sustained pecuniary and non-economic injuries in an amount that exceeds $75,000.00, including lost wages, benefits, retirement funds, the denial of promotional opportunity, humiliation, embarrassment, unnecessary pain and suffering, and she has incurred attorneys' fees, and costs associated with the prosecution of this action.

## COUNT II
### RELIGIOUS DISCRIMINATION

**Violation of the Texas Commission on Human Rights Act, Tex. Labor Code § 21.051**

78.    Ms. Alvarez re-alleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

79.    The Texas Commission on Human Rights Act prohibits employers from discriminating on the basis of *inter alia* religion. Tex. Labor Code § 21.051.

80.    Ms. Alvarez sincerely holds religious beliefs and is a member of a protected class based on her religion.

81.    Brokers knew of Ms. Alvarez's sincerely held religious beliefs as evidenced by its engagement in the interactive process, and Brokers' February 4, 2023, decision denying Ms. Alvarez's request for a religious accommodation.

82.    Alternatively, to the extent Brokers contends it did not know of Ms. Alvarez's sincerely held religious beliefs, Brokers then concedes it denied her request for an accommodation without substantively engaging in an interactive process that sufficiently apprised Brokers of Ms. Alvarez's sincerely held religious beliefs and otherwise concedes that Brokers did not sufficiently or properly review Ms. Alvarez's accommodation request in a manner consistent with her right to an individualized and informed case-by-case review of her request.

83.    Alternatively, Brokers (1) knew of Ms. Alvarez's sincerely held religious beliefs, but did not subjectively believe her beliefs were religious, or (2) Brokers did believe her beliefs were religious, but did not believe that Ms. Alvarez did not sincerely hold the beliefs asserted, and as a result, Brokers denied her accommodation request.

84.    Brokers denied Ms. Alvarez's religious accommodation request because it did not believe her beliefs were religious in nature.

85.     Brokers denied Ms. Alvarez's religious accommodation request because it did not believe Ms. Alvarez sincerely held the religious beliefs she asserted.

86.     Brokers denied Ms. Alvarez's religious accommodation request because it did not believe the beliefs she asserted were religious, nor did Ms. Alvarez sincerely hold the beliefs she asserted.

87.     Ms. Alvarez' beliefs asserted in the February 3, 2023 are religious in nature, in that compliance with the beliefs asserted impacts her ability to ultimately go to Heaven and be in a place with the Lord. The beliefs asserted, are sincere and meaningful to Ms. Alvarez and the beliefs asserted occupy a place parallel to that filled by God.

88.     Ms. Alvarez is an employee within the meaning of the TCHRA.

89.     Brokers is an employer within the meaning of the TCHRA.

90.     The TCHRA forbids an employer from refusing to provide a reasonable accommodation to an employee in need of a religious accommodation, absent proof that granting the accommodation would impose upon the employer an undue hardship.

91.     This extension of actionable religious discrimination that includes an employer's failure or refusal to accommodate is derived from the TCHRA's adoption of Title VII's definition of "religion" and includes "all aspects of religious observance and practice, as well as belief, unless an employer demonstrates that he is unable to reasonably accommodate to an employee's or prospective employee's religious observance or practice without undue hardship on the conduct of the employer's business.".

92.     A plaintiff can therefore make out a *prima facie* case under the TCHRA by showing (1) she sincerely held religious beliefs; (2) the practice of which conflicted with an employment duty; (2) the employer took adverse action, including suspension without pay and termination; (4)

because of the plaintiff's inability to fulfill the job requirement; and (5) the plaintiff's religious practice was a motivating factor in the employer's decision.

93.    Here, Ms. Alvarez advised Brokers of her sincerely held religious beliefs that she could not comply with Brokers' mandatory facial covering policy as she sincerely believes that wearing facial coverings dishonors God, conceals her identity, and assaults her body in which the Holy Spirit resides.

94.    To violate her aforesaid sincerely held religious belief would constitute a sin and impact Ms. Alvarez's ability from one day, going to Heaven and sharing that Place with God.

95.    Ms. Alvarez informed Brokers of the conflict between her sincerely held religious beliefs and Brokers' mandatory facial covering policy and expressly sought an accommodation.

96.    In response to Ms. Alvarez's request for an accommodation, Brokers took an adverse action against her by denying her an accommodation, placing her on unpaid leave, and terminating her employment.

97.    Denying Ms. Alvarez's accommodation request is an adverse employment action.

98.    Suspending Ms. Alvarez without pay is an adverse employment action.

99.    Terminating Ms. Alvarez is an adverse employment action.

100.    Brokers' adverse employment action of denying Ms. Alvarez's accommodation request is actionable as it violates the TCHRA.

101.    Brokers' adverse employment action of suspending Ms. Alvarez without pay Ms. is actionable as it violates the TCHRA.

102.    Brokers' adverse employment action of terminating Ms. Alvarez is actionable as it violates the TCHRA.

103.    Brokers was motivated by Ms. Alvarez's religion, practice of her religion, exercise of her sincerely held religious beliefs, or her refusal to violate her sincerely held religious beliefs, and with such motivation, Brokers took one or more of the aforementioned adverse employment actions against Ms. Alvarez.

104.    Brokers made no effort to accommodate Ms. Alvarez's sincerely held religious objection to its mandatory facial covering policy and then terminated her employment because of the aforesaid conflict between Brokers policy and Ms. Alvarez's sincerely held religious beliefs.

105.    Brokers' failure to produce any alternative basis for why it could not accommodate Ms. Alvarez therefore requires Brokers to have accepted Ms. Alvarez's proposal absent undue hardship.

106.    To the extent Brokers alleges the basis for why it refused to accommodate Ms. Alvarez rests upon any assertion of Brokers' subjective beliefs concerning the sincerity of Ms. Alvarez's beliefs, Brokers failed to act as a reasonably prudent employer by deciding to deny her accommodation request based on information it unilaterally and subjectively deemed to be "vague" and "merely an excuse" instead of seeking further clarification on her beliefs or providing Ms. Alvarez more room to more thoroughly articulate her beliefs on the form Brokers demanded she submit her request.

107.    Brokers has not and cannot articulate the "undue hardship" it would have endured had Brokers accommodated Ms. Alvarez.

108.    Brokers has not and cannot articulate the basis upon which the interest effectuated by its mandatory facial covering policy is so compelling as to lawfully infringe upon Plaintiff's interest in exercising her constitutional and fundamental right to freely exercise her religion.

109.    Brokers has not and cannot articulate a basis as to why its mandatory masking policy is the least restrictive means necessary to effectuate a compelling interest that is so compelling as to legally excuse Brokers from infringing upon Plaintiff's interest in exercising her constitutional and fundamental right to freely exercise her religion.

110.    Brokers mandatory masking policy does not effectuate a compelling interest.

111.    Brokers mandatory masking policy does not effectuate any interest.

112.    Brokers mandatory masking policy is unlawful, as applied.

113.    Brokers was not subjected to undue hardship at any time, nor would Brokers have been subjected to undue hardship had it accommodated Ms. Alvarez as its mandatory masking policy did not achieve any interest, and absent achieving an interest, the policy is definitionally futile as those who are in compliance and those who are not, are nevertheless equally positioned.

114.    The reasonable accommodations Ms. Alvarez offered and suggested were sufficient and did not constitute undue hardships.

115.    The reasonable accommodations Ms. Alvarez offered and suggested did not detrimentally impact any interest Brokers purportedly effectuated by and through its mandatory masking policy.

116.    Other substantially similar or virtually identical national and international logistics companies that qualify as an "employer" under the TCHRA have not insisted on mandatory masking without allowing accommodations for religious objectors.

117.    As a direct and proximate result of the aforesaid complained of conduct in violation of the TCHRA, Ms. Alvarez sustained pecuniary and non-economic injuries in an amount that exceeds $75,000.00, including lost wages, benefits, retirement funds, the denial of promotional

opportunity, humiliation, embarrassment, unnecessary pain and suffering, and she has incurred attorneys' fees, and costs associated with the prosecution of this action.

## PRAYER FOR RELIEF

WHEREFORE, Ms. Alvarez respectfully prays that this Honorable Court enter judgment in her favor, award such relief as to make Ms. Alvarez whole and remedy the aforesaid violations of Texas and federal law, and hold Brokers America, Inc. liable and in doing so, award all legal and equitable relief provided by law, including but not limited to:

(a) Issue a declaratory judgment that the practices complained of in this Complaint are unlawful and violate Title VII of the Civil Rights Act and the Texas Commission on Human Rights Act;

(b) Enjoin Brokers from pursuing its policy of making no religious accommodations to its oath requirement for its employees;

(c) Require Brokers to adopt hiring and employment policies that comply with Title VII and TCHRA, including their requirement that employers make reasonable accommodations to religious beliefs and practices in general and faith-based objections to loyalty oaths in particular and any other appropriate and legally permissible injunctive relief in accordance with proof;

(d) Award Ms. Alvarez all appropriate and legally available monetary relief, including lost compensation and benefits, in an amount to be determined at trial to make her whole for the loss she suffered as a result of the unlawful conduct alleged in this Complaint;

(e) Award Ms. Alvarez any interest at the legal rate on such damages as appropriate, including pre- and post-judgment interest;

(f) Award compensatory damages to Ms. Alvarez to fully compensate her for the pain, suffering, mental anguish, emotional distress, and other expenses caused by the unlawful conduct alleged in this Complaint;

(g) Award Ms. Alvarez a reasonable amount of attorney's fees for the work of her attorneys in pursuit of this action and the protection of her rights;

(h) Award Ms. Alvarez all costs, disbursements, and expenses she paid or that were incurred on her behalf;

(i) Award such additional relief the Court deems just and proper; and

(j) Award any other relief as allowed by law.

## DEMAND FOR JURY TRIAL

Ms. Alvarez hereby demands a trial by jury of all issues and each and every cause of action so triable.

Dated: April 10, 2023                              Respectfully submitted,

                                                   ADRIANA ALVAREZ

                                   By:  /s/ *Paul M. Davis*
                                        Paul M. Davis
                                        PAUL M. DAVIS & ASSOCIATES, P.C.
                                        9355 John W. Elliott Dr., Suite 25454
                                        Frisco, TX 75033
                                        Tel: (945) 348-7884

                                   By:  /s/ *Michael A. Yoder*
                                        Michael A. Yoder* [DC1600519]
                                        LAW OFFICE OF MICHAEL A. YODER, PLLC
                                        2300 Wilson Blvd., Suite 700
                                        Arlington, VA 22201
                                        (571) 234-5594
                                        michael@yoderesq.com
                                        *pro hac vice* forthcoming

                                        *Counsel for Plaintiff Adriana Alvarez*